IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20–cv–00893–PAB–KMT

JOHNNY SABBATH,

     Plaintiff,

v.

J. HICKS, Correctional Officer, and
K. HICKS, S.I.S., Special Investigative Supervisor, in their individual and official capacities,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on "Defendants' Motion to Dismiss Amended Complaint [ECF No. 32]" (Doc. No. 39 [Mot.]), filed August 7, 2020.  Plaintiff did not file a response.

## STATEMENT OF THE CASE

Plaintiff, who proceeds *pro se*, is an inmate incarcerated at the United States Penitentiary—Administrative Maximum ("ADX").  (Doc. No. 32 [Compl.] at 2.)  Plaintiff claims to be a practitioner of the "Sabaean-Nuwaupian" religion.  (*Id.* at 4.)  He asserts that Defendants, both of whom are ADX employees, have interfered with his ability to practice and speak about this religion.  Specifically, he contends that on August 29, 2018, Defendant K. Hicks removed religious books, notes, and photographs from his cell and falsely stated that these items belonged to a different inmate.  (*Id.*, ¶¶ 8–10.)  He also asserts that about a year later, on June 27,

2019, Defendant J. Hicks removed similar religious property from his cell, including manuscripts, books, notes, photographs, and research, because Plaintiff "wrote" about this religion.  (*Id.*, ¶¶ 12–16.)  Finally, Plaintiff alleges that Defendant K. Hicks has prevented him from sending and receiving religious material and from possessing religious literature.  (*Id.*, ¶¶ 21–26.)

Plaintiff sues Defendants in their individual and official capacities under the First Amendment, Fifth Amendment[1], and the Religious Freedom Restoration Act ("RFRA").  (*See generally,* Compl. at 8–13.)  Plaintiff seeks declaratory relief, injunctive relief, and compensatory and punitive damages.  (*Id.* at 14–16.)

Defendants move to dismiss the claims against them in their entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Mot.)

## STANDARDS OF REVIEW

### A.    Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's

---

[1] Plaintiff styles some of his claims as Fourteenth Amendment claims.  (Compl. at 12–13.) However, "no constitutional tort action under the Fourteenth Amendment may be brought against a federal officer" because that Amendment applies only to state action. *Tucker v. United States*, 2013 WL 4498897, at *4 (D. Utah Aug. 19, 2013) (collecting cases); *Doe v. Univ. of Denver*, 952 F.3d 1182, 1187 (10th Cir. 2020) (due process claims against federal officials must proceed under Fifth Amendment).  Accordingly, the court construes Plaintiff's claims as being asserted under the Fifth Amendment.

"conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").  The plaintiff's *pro se* status does not entitle him to application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## B.      Failure to State a Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means

that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id*.  The *Iqbal* evaluation requires two prongs of

analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the

assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or

merely conclusory.  *Id*. at 679–81.  Second, the Court considers the factual allegations "to

determine if they plausibly suggest an entitlement to relief."  *Id*. at 681.  If the allegations state a

plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting

factual averments.  *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S at 678.  Moreover,

"[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.' "  *Id.* (citation omitted).  "Where a complaint pleads

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of 'entitlement to relief.' "  *Id.* (citation omitted).

## ANALYSIS

### A.     *Subject Matter Jurisdiction Over Plaintiff's Official Capacity Claims for Damages*

At the outset, the court notes that Defendants do not seek to dismiss Plaintiff's claims for

monetary damages against Defendants in their official capacities for lack of subject matter

4

jurisdiction.  "Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.' "  *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).

The federal defendants, in their official capacities, enjoy sovereign immunity from *Bivens* actions.  *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."); *FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (holding the United States is immune from a *Bivens* claim for money damages); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) ("A *Bivens* action may not be brought against federal agencies or agents acting in their official capacities.").  Sovereign immunity removes a court's jurisdiction over a complaint.  *See Governor of Kansas v. Kempthorne*, 516 F.3d 833, 846 (10th Cir. 2008) (noting "the strict jurisdictional nature of sovereign immunity").

Plaintiff's *Bivens* claims for money damages against the individual defendants in their official capacities should be dismissed for lack of subject matter jurisdiction.

### B.      Bivens *Remedy*

Defendants argue that Plaintiff may not assert a claim for damages pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), based on alleged violations of the First and Fifth Amendments.

A *Bivens* action permits a person deprived of federal constitutional rights by a federal actor to maintain an action for monetary damages against that actor in an individual capacity.

*See Bivens,* 403 U.S. 388.  In *Bivens*, the United States Supreme Court recognized an implied

cause of action for damages against federal officers who were alleged to have violated an

inmate's Fourth Amendment rights.  403 U.S. at 397.  Since *Bivens*, the Court has found such a

remedy to be available in two additional contexts: (1) a Fifth Amendment Due Process claim

against a United States Congressman by an administrative assistant who claimed she was fired

based on her gender; and (2) an Eighth Amendment deliberate indifference claim against federal

prison guards by a prisoner's estate for failing to treat the prisoner's asthma.  *See Carlson v.*

*Green*, 446 U.S. 14 (1980) (Eighth Amendment); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth

Amendment).  "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in

which the Court has approved of an implied damages remedy under the Constitution itself."

*Ziglar v. Abbasi*, ⸺ U.S. ⸺, 137 S. Ct. 1843, 1855 (2017).  The Court has subsequently

"urged caution before extending *Bivens* remedies into any new context."  *Id.* at 1857 (quoting

*Corr. Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001)); *see Peoples v. CCA Det. Centers*, 422

F.3d 1090, 1096 (10th Cir. 2005) ("[T]he purpose of *Bivens* is only 'to provide an otherwise

nonexistent cause of action against individual officers alleged to have acted unconstitutionally,

or to provide a cause of action for a plaintiff who lacked any alternative remedy' for harms

caused by an individual officer's unconstitutional conduct.").

　　　"Whether a *Bivens* action exists for a given constitutional violation must be decided on a

case-by-case basis."  *Burton-Bey v. United States*, 100 F.3d 967 (10th Cir. 1996) (citing *Beattie*

*v. Boeing Co.*, 43 F.3d 559, 564 (10th Cir. 1994)).  In evaluating whether a *Bivens* claim can

proceed, the first step is to determine whether the case "presents a new *Bivens* context."  *Abbasi*,

137 S. Ct. at 1859–60.  The "proper test" for that inquiry is whether "the case is different in a

meaningful way from previous *Bivens* cases decided by the Court." *Id.* at 1859.  If so, "then the context is new." *Id.*  "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 1860.

With respect to Plaintiff's First Amendment claim, the Supreme Court has refused explicitly to acknowledge that federal prisoners may bring a claim for monetary damages based on an alleged First Amendment violation.  *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (noting that the Court has "declined to extend *Bivens* to a claim sounding in the First Amendment"); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (refusing to recognize a right to seek damages for alleged First Amendment violation under *Bivens*).  "Conceivably, the Court has not recognized such claims in the context of claims by prison inmates because prisoners may pursue claims under the Federal Tort Claims Act or claims for injunctive relief based on an alleged violation of the First Amendment." *Blackman v. Torres,* No. 11–cv–2066–REB–BNB, 2013 WL 941830, at *2 (D. Colo. Mar. 11, 2013) (citing *Wilkie*, 551 U.S. at 550; 42 U.S.C. § 1997e(e)).

For similar reasons, the court finds that there is no *Bivens* remedy available for violations of Plaintiff's Fifth Amendment due process rights.  A prisoner may seek injunctive relief against BOP officials, *Malesko,* 534 U.S. at 74, or could pursue a remedy under the mandamus statute, 28 U.S.C. § 1361. *See Simmat v. U.S. Bureau of Prisons,* 413 F.3d 1225, 1233–34.  Further, in

the procedural due process context, the appropriate remedy is not damages, but "procedural

protections as the particular situation demands." *Morrisey v. Brewer,* 408 U.S. 471, 481 (1972).

Because there is no *Bivens* remedy for the alleged violations of Plaintiff's First and Fifth

Amendment claims, these claims are properly dismissed to the extent that they seek damages

against Defendants in their individual capacities.

**C.      Individual Capacity RFRA Claims**

Defendants assert RFRA does not authorize individual-capacity or damages claims

against federal officials.  However, in a recent decision, the United States Supreme Court held

that "RFRA provides, as one avenue for relief, a right to seek damages against Government

employees." *Tanzin v. Tanvir*, —— S. Ct. 550 ——,141 S. Ct. 486, 487 (2020).  In other words,

"RFRA's express remedies provision permits litigants, when appropriate, to obtain money

damages against federal officials."  141 S. Ct. at 493.

Accordingly, Defendants' motion to dismiss Plaintiff's individual-capacity RFRA claims

for damages against the defendants should be denied on this basis.[2]

**D.      First Amendment Claims**

Plaintiff asserts two claims under the First Amendment. First, he alleges that Defendants

violated his right to freely exercise his Sabaean-Nuwaupian religion.  (Compl. at 8–10.)  Second,

he contends that Defendants violated his right to free speech.  (*Id.* at 10–12.)

Both the Supreme Court and the Tenth Circuit have acknowledged that due to the

specialized nature of the prison environment, restrictions that may "raise grave First Amendment

concerns outside the prison context" may be permissible within a prison.  *Gee v. Pacheco*, 627

---

[2] The court addresses the merits of Plaintiff's RFRA claims *infra.*

F.3d 1178, 1187 (10th Cir. 2010) (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987)).  To assess

the constitutionality of a prison restriction, courts must analyze not only whether the restriction

impinges on a constitutional right, but also whether the restriction is "reasonably related to

legitimate penological interests" given the unique security and administrative challenges that

operating a prison presents.  *See id.*

To state a claim for relief on his First Amendment claims, Plaintiff must plead facts from

which a plausible inference can be drawn that (1) his constitutional rights have been impinged

on; and (2) the complained of action was not reasonably related to a legitimate penological

interest.  *Al-Owhali v. Holder*, 687 F.3d 1236, 1239 (10th Cir. 2012).

### 1.  *Free Exercise Claims*

To state a First Amendment free exercise claim, Plaintiff must plead facts plausibly

showing that (1) Defendants' actions "substantially burdened . . . [Plaintiff's] sincerely-held

religious beliefs," *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007); (2) Defendants lacked a

legitimate penological interest in taking such actions, *id.*; and (3) the right allegedly violated was

clearly established at the time the acts occurred.  *See Harlow*, 457 U.S. at 818.

In order to plead a "substantial burden," Plaintiff must allege facts plausibly showing that

Defendants: (1) "prevented [his] participation in conduct motivated by a sincerely held religious

belief"'; (2) "plac[ed] substantial pressure on [Plaintiff] either not to engage in conduct

motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held

religious belief"; or (3) "require[d] [Plaintiff's] participation in an activity prohibited by a

sincerely held religious belief."  *Khan v. Barela*, 808 F. App'x 602, 614–15 (10th Cir. 2020).

Plaintiff's only allegation against Defendant J. Hicks is that, on June 27, 2019, Defendant

J. Hicks removed religious property, including manuscripts, books, notes, photographs, and

research, from Plaintiff's cell because Plaintiff "'wrote' about his religion." (Compl., ¶¶ 12, 16.)

Plaintiff asserts that this created a substantial burden (*id.*, ¶ 23), but he does not plead facts

showing that this action prevented him from participating in any particular religious conduct,

pressured him not to engage in religious conduct, or required him to participate in an activity

prohibited by his religious beliefs. Plaintiff's complaint is devoid of allegations about how the

removal of these items actually impacted his religious practice.

Accordingly, Plaintiff has not met his pleading burden on this element. *See, e.g.*, *Sullivan

v. Younce*, 2017 WL 655175, at \*6 (E.D. Va. Feb. 16, 2017), *aff'd*, 697 F. App'x 190 (4th Cir.

2017) (plaintiff failed to state a free exercise claim where he did not allege the defendants'

confiscation of his religious property put "'substantial pressure' on him to 'modify his behavior

and to violate his beliefs'").

As to Defendant K. Hicks, Plaintiff alleges that, on August 29, 2018, Defendant K. Hicks

removed "religious books, notes, photos of Egyptian hieroglyphs, deities, and community

members from Plaintiff's cell"; did not provide a confiscation slip; stated that this property was

contraband because it "belonged to another inmate"; and later destroyed the property. (Compl.,

¶¶ 8–10.) Again, Plaintiff does not allege how the confiscation of these contraband materials

impacted his religious practice. He does not allege that he used this property in his religious

practice, nor does he allege that not having these particular materials prevented him from

participating in any specific religious activities. (*See generally*, *id.*)

Plaintiff also alleges Defendant K. Hicks denied Plaintiff "the right to send religious property home," continues to deprive him of "any religious literature and writings," and withholds his correspondence with his faith group outside the prison. (Compl., ¶¶ 18, 21–22.) These broad allegations lack sufficient factual enhancement to permit a plausible inference that Defendant K. Hicks' actions substantially burdened Plaintiff's religious beliefs. *See Khan*, 808 F. App'x at 614–15. The absence of specifics concerning the property, the unnamed "literature and writings," and the content of the allegedly withheld correspondence—facts Plaintiff would know—are particularly insufficient in the prison context, where a "claim will often not be plausible unless it recites facts that might well be unnecessary in other contexts." *Gee*, 627 F.3d at 1185; *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012) ("While we do not mandate the pleading of any specific facts in particular, there are certain details the Plaintiff should know and could properly plead to satisfy the plausibility requirement.").

Because Plaintiff has pleaded no substantial burden, the court need not address Defendants' other arguments as to Plaintiff's First Amendment free exercise claims. Plaintiff's First Amendment free exercise claims should be dismissed.

### 2. *Free Speech Claims*

To state a "free speech" claim under the First Amendment, Plaintiff must again allege facts plausibly showing that (1) the actions at issue impinged on Plaintiff's free speech rights; and (2) these acts were not reasonably related to legitimate penological interests. *Gee*, 627 F.3d at 1188.

Regarding Plaintiff's Free Exercise claim, Defendants argue only that Plaintiff has failed to allege that the defendants' alleged acts were not reasonably related to legitimate penological

11

interests.  (Mot. at 11–12, 15.)  Specifically, Defendants argue that both officers took action based on their correctional assessment that Plaintiff cannot possess materials that contain code or that belong to other inmates.  (Mot. at 15.)

Plaintiff alleges on August 29, 2018, Defendant K. Hicks removed religious books, notes, and photographs from his cell, "falsely claiming the religious property . . . belonged to another inmate and was nuisance contraband."  (Compl., ¶¶ 8–9.)  Though BOP policy does consider items obtained from other inmates without staff authorization to be "nuisance contraband" (*see* Mot. at 12 & n.9), the policy does not allow a defendant to *falsely claim* materials are contraband in order to remove the materials from a prisoner's cell, as Plaintiff alleges.  The court finds Plaintiff has stated a claim that Defendant K. Hicks violated his First Amendment free speech rights related to her alleged confiscation of materials from his cell on August 29, 2018.

Nevertheless, to the extent Plaintiff generally alleges that Defendant K. Hicks interfered with his ability to send and receive religious material or to possess religious literature, Plaintiff does not support those assertions with factual detail that enables the court to draw a plausible inference that Defendant K. Hicks' actions lacked a legitimate penological purpose. Plaintiff fails to identify what specific materials he was prevented from possessing or sending, and he fails to allege specific facts showing that Defendant K. Hicks had no reasonable basis to restrict his access to these materials.

Plaintiff also alleges that Defendant J. Hicks removed similar religious property from his cell, including manuscripts, books, notes, photographs, and research, apparently because Plaintiff wrote a manuscript about his religion.  (*Id.*, ¶¶ 11–16.)  These allegations are belied by Exhibit E, attached to Plaintiff's Complaint, which shows that the property Defendant J. Hicks removed

12

from Plaintiff's cell on June 27, 2019 was not returned to him because, among other things, it was determined to contain coded material.  (*Id.* at 23.)  In removing those materials from Plaintiff's possession, Defendant J. Hicks acted in accordance with BOP policy and Tenth Circuit law.  *See* BOP Program Statement P5360.09, Religious Beliefs and Practices, § 7(c) (providing that "encryption" is not an authorized religious practice)[3] and *Rojas v. Heimgartner*, 604 F. App'x 692, 694 (10th Cir. 2015) (observing that preventing the transmission of coded messages is a valid penological interest).  Accordingly, Plaintiff has failed to plead that Defendant J. Hicks' actions, based on established policy, were not reasonably related to a legitimate penological interest.

Therefore, Plaintiff's free speech claim related to the confiscation of his materials on August 29, 2018 by Defendant K. Hicks survives at this stage.  Plaintiff's free speech claim against Defendant K. Hicks regarding general allegations that she interfered with Plaintiff's ability to send and receive religious material or to possess religious literature should be dismissed, and Plaintiff's free speech claim against Defendant J. Hicks should be dismissed.

---

[3] BOP Program Statement P5360.09, Religious Beliefs and Practices, § 7(c) is available at https://www.bop.gov/policy/progstat/5360_009.pdf; BOP Program Statement 5266.10, Incoming Publications, § (4)(b)(4) (incoming publications written in code shall be rejected), available at https://www.bop.gov/policy/progstat/5266_011.pdf.  The court may take judicial notice of the BOP's regulations.  *See Gleave v. Graham*, 954 F. Supp. 599, 605 (W.D.N.Y. 1997) (taking judicial notice of "Program Statements" issued by the Bureau of Prisons); *Antonelli v. Ralston*, 609 F.2d 340, 341 n.1 (8th Cir. 1979) (judicial notice taken of Bureau of Prisons' Program Statement).

### E.      RFRA Claim

To state a claim for relief under RFRA, a plaintiff must show that he "wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government."[4]  *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312–13 (10th Cir. 2010).  The test for whether a defendant's actions "substantially burdened" religious exercise under RFRA is the same as that applied to a First Amendment free exercise claim.  *See Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1138 (10th Cir. 2013) (setting forth the same three ways in which a plaintiff can demonstrate a "substantial burden" under RFRA), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 134 S. Ct. 2751 (2014).

For the same reasons Plaintiff has not adequately alleged facts showing that either Defendant substantially burdened his religious rights to state a First Amendment free exercise claim, he has failed to state a RFRA claim.  *See* Section C.1, *supra.*  Specifically, Plaintiff does not allege facts plausibly showing that Defendants prevented his participation in any particular religious conduct, or that they prevented such participation by and through their own individual acts.

Plaintiff's RFRA claim should be dismissed.

### F.      Fifth Amendment Due Process Claim

Plaintiff asserts that Defendants are violating his Fifth Amendment due process rights by "taking [his] religious property without reasonable justification."  (Compl., ¶¶ 33–34.)

---

[4] Unlike a First Amendment claim, a plaintiff asserting a RFRA claim is not required to affirmatively allege that the restriction at issue lacked a reasonable relationship to a legitimate penological interest.  *See Ghailani v. Sessions*, 859 F.3d 1295, 1304–05 (10th Cir. 2017).

To state a Fifth Amendment due process claim, Plaintiff must allege facts plausibly showing that (1) "there exists a liberty or property interest of which [he] has been deprived[;]" and (2) "the procedures followed by the [defendant] were constitutionally [in]sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).   "[P]roperty interests are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source." *Ledford v. Sullivan*, 105 F.3d 354, 357 (7th Cir. 1997).  Moreover, "[a] constitutionally-protectible property interest does not arise simply because the Government has deprived someone of something that he desires or has a unilateral expectation of receiving; it arises only when the person has a 'legitimate entitlement to it.' " *Brown v. Cooke*, No. 06–cv–01092–MSK–CBS, 2009 WL 641301, at *20 (D. Colo. Mar. 9, 2009) (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)).

In the prison context, not all deprivations of property are of constitutional magnitude. The Tenth Circuit has held that a deprivation of property in prison does not implicate "due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006).

In this case, Plaintiff has made no plausible showing that the removal of property from his cell on two occasions, by either Defendant, constituted an "atypical and significant hardship." Moreover, Plaintiff does not allege facts describing with specificity what this property consisted of, or how its confiscation impacted his religious practice or his day–to–day life.  Accordingly, the Plaintiff has failed to allege that "there exists a liberty or property interest of which [he] has been deprived[.]" *Swarthout*, 562 U.S. at 219.

Plaintiff also has not alleged facts plausibly showing that the procedures attendant to the deprivation of his property interest were inadequate in this case.  Plaintiff acknowledges that he was able to file and exhaust his administrative remedies with the BOP regarding these incidents. (*See* Compl., ¶ 6 & Exs. D & E.)  Prisoners who are afforded "a meaningful post-deprivation remedy for the alleged loss and cannot assert a constitutional claim" for a procedural due process violation based on a protected property interest. *Wilson v. United States*, 29 F. App'x 495, 496–97 (10th Cir. 2002); *see also Williams v. Mestas*, 355 F. App'x 222, 224 (10th Cir. 2009).

Plaintiff has failed to state a Fifth Amendment due process claim, and thus the claim should be dismissed.

### G.      *Qualified Immunity*

Defendants argue that they are entitled to qualified immunity on Plaintiff's claims.  The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation and citation omitted).  To defeat a defense of qualified immunity, a plaintiff must show: "(1) that the defendant's conduct violated a constitutional or statutory right, and (2) that the law governing the conduct was clearly established at the time of the alleged violation." *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004); *see also Pearson*, 555 U.S. at 232.  The court is not required to address these inquiries in any specific order, *Pearson*, 555 U.S. at 236–37, and if a plaintiff fails to carry either part of his or her two–part burden, the defendant is entitled to qualified immunity, *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  Where no constitutional right has been violated "no further inquiry is necessary and the defendant is

entitled to qualified immunity."  *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted).

This court has determined Plaintiff fails to state the following claims:  (1) a First Amendment free exercise claim against either defendant; (2) a First Amendment free speech claim against Defendant J. Hicks; (3) a First Amendment free speech claim against Defendant K. Hicks regarding general allegations that she interfered with Plaintiff's ability to send and receive religious material or to possess religious literature; (4) a RFRA claim against either defendant; and (5) a Fifth Amendment due process claim against either defendant.  The defendants are entitled to qualified immunity on these claims.

As to the remaining claim, Plaintiff's First Amendment free speech claim asserted against Defendant K. Hicks related to the confiscation of materials on August 29, 2018, Defendants argue Plaintiff has failed to satisfy the "clearly established" prong of the qualified immunity analysis.  (Resp. at 16.)  However, Defendants' argument is based on their contention that Defendant K. Hicks acted in accordance with BOP policy in confiscating materials that belonged to other inmates. (*Id.*)  The court has rejected this argument.  *See* Section C.2, *supra*. Accordingly, Defendant K. Hicks is not entitled to qualified immunity on the First Amendment free speech claim asserted against Defendant K. Hicks related to the confiscation of materials on August 29, 2018.

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** that "Defendants' Motion to Dismiss Amended Complaint [ECF No. 32]" (Doc. No. 39) be **GRANTED in part** and **DENIED in part** as follows:

1. Plaintiff's *Bivens* claims for money damages against the individual defendants in their official capacities should be dismissed for lack of subject matter jurisdiction;

2. Plaintiff's First and Fifth Amendment claims, to the extent that they seek damages against Defendants in their individual capacities, should be dismissed with prejudice;

3.  Plaintiff's First Amendment free exercise claims should be dismissed with prejudice;

4. Plaintiff's free speech claim against Defendant K. Hicks regarding general allegations that she interfered with Plaintiff's ability to send and receive religious material or to possess religious literature should be dismissed with prejudice, and Plaintiff's free speech claim against Defendant J. Hicks should be dismissed with prejudice;

5. Plaintiff's RFRA claim should be dismissed with prejudice;

6. Plaintiff's Fifth Amendment due process claim should be dismissed with prejudice;

7. The defendants should be granted qualified immunity on the following claims:  (a) Plaintiff's First Amendment free exercise claim against both defendants; (b) Plaintiff's First Amendment free speech claim against Defendant J. Hicks; (c) Plaintiff's First Amendment free speech claim against Defendant K. Hicks regarding general allegations that she interfered with Plaintiff's ability to send and receive religious material or to possess religious literature; (d) Plaintiff's RFRA claim both defendants; and (5) Plaintiff's Fifth Amendment due process claim against both defendants; and

8. Plaintiff's First Amendment free speech claim asserted against Defendant K. Hicks related to the confiscation of materials on August 29, 2018 should proceed only to the extent Plaintiff seeks equitable relief.

**ADVISEMENT TO THE PARTIES**

Within fourteen days after service of a copy of this Recommendation, any party may

serve and file written objections to the magistrate judge's proposed findings of fact, legal

conclusions, and recommendations with the Clerk of the United States District Court for the

District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re*

*Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district

court on notice of the basis for the objection will not preserve the objection for de novo review.

"[A] party's objections to the magistrate judge's report and recommendation must be both timely

and specific to preserve an issue for de novo review by the district court or for appellate review."

*United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make

timely objections may bar de novo review by the district judge of the magistrate judge's

proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of

the right to appeal from a judgment of the district court based on the proposed findings of fact,

legal conclusions, and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d

573, 579–80 (10th Cir. 1999) (holding that the district court's decision to review magistrate

judge's recommendation de novo despite lack of an objection does not preclude application of

"firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901,

904 (10th Cir. 1995) (finding that cross–claimant waived right to appeal certain portions of

magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d

1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate

judge's ruling by failing to file objections).  *But see, Morales–Fernandez v. INS*, 418 F.3d 1116,

1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice

require review).

Dated this 19th day of February, 2021.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge